

# THE ATTORNEY GENERAL
# OF TEXAS

PRICE DANIEL                    AUSTIN, TEXAS
ATTORNEY GENERAL

August 11, 1949

Hon. Robert S. Calvert                Opinion No. V-879
Comptroller of Public Accounts
Austin, Texas                         Re: The basis for computation
                                          of the occupation tax on
                                          business of producing gas
                                          by Union Producing Com-
                                          pany.

Dear Sir:

Your opinion request dated May 19, 1949, is as follows:

"Please advise me with reference to United Gas Pipe Line Co.-

A. If the tax under Article 7047b should be com-puted at 5.2% of the total amount of money paid to the producers as set out in sub-sections 1 and 2 of Section 1.

B. Or if the condensate recovered should be taxed at the same rate as oil, as set out in sub-section 3 of Section 1.

"   ...

"Also advise me if your answer is the same under the terms of the Processing Contract of Chicago Corpo-ration."

The pertinent provisions of Article 7047b, V.C.S., are as follows:

"Section 1. (1) There is hereby levied an occupa-tion tax on the business or occupation of producing gas within this State, computed as follows:

A Tax shall be paid by each producer on the amount of gas produced and saved within this State equivalent to five and two-tenths (5.2) per cent of the market value thereof as and when produced . . .

"(2) The market value of gas produced in this State shall be the value thereof at the mouth of the well; however, in case gas is sold for cash only, the tax shall be computed on the producer's gross cash receipts. In all cases where the whole or a part of the consideration for the sale of gas is a portion of the products extracted from the producer's gas or a portion of the residue gas, or both, the tax shall be computed on the gross value of all things of value received by the producer, including any bonus or premium; . . .

"(3) All liquid hydrocarbons that are recovered from gas by means of a separator or by other non-mechanical methods, incidental to the production of said gas, shall be taxed at the same rate as oil as levied by Acts 1941 Forty-Seventh Legislature Chapter 184, Article I, Section 1." (Emphasis added.)

In 1945, Section 1 of Article 7047b, V.C.S., with regard to the taxation of liquid hydrocarbons recovered by non-mechanical means, was amended by adding the words "incidental to the production of said gas." Acts 45th Leg. 1945, Ch. 269, p. 423. Although the Legislature gave no indication of the meaning to be accorded this wording, we cannot assume that the Legislature would do a useless thing. Therefore, giving the words used their usual and common meaning, in order for liquid hydrocarbons to be taxed at the same rate as oil (4 1/8%) they must be recovered as an incident to, or pertaining to, or in connection with, the actual production of the natural gas by the producer.

After careful study of the contract in question (Skelly No. 1002) it is clear that under the contract the various producers own, operate, and equip the gas wells. Production of the natural gas is completed, the sale is consummated, and the title to the natural gas and all products passes to the buyer at the well-head. Paragraph 4 of the contract, at page 9, provides in part:

"In addition to the above equipment to be installed by Seller, Seller agrees, at its expense, to make such other necessary and reasonable connections or changes in connections as may be required to enable Buyer to connect its gathering lines and equipment to each well covered by this contract, and each such point of connection to a well shall be a delivery point hereunder, at which point the title and possession of Seller in and to the natural gas and other products sold to Buyer under this contract shall pass to and vest in Buyer."

The taxpayer (United Gas Pipe Line Company) makes the following statement at page 5 of the memorandum submitted to the Comptroller:

"United Gas Pipe Line Company purchases the entire production of gas and liquid hydrocarbons at the mouth of the well from the producers. Title passes at that point and the ownership is thereafter in the United Gas Pipe Line Company who has bought the production."

Under the facts presented, the sale is made at well-head and title passes at that point. The production of the gas is completed upon delivery by the producer into the lines of the purchaser. The separators, meters and other equipment located near the wells are owned and operated by the purchaser. The separation of the condensate at the well location is made for the purposes of measuring the number of cubic feet of gas produced and determining the content of condensate in the natural gas in order to arrive at the consideration to be paid the producers under the formula set out in the contract. After this initial separation of the condensate and the measurement of the gas produced from each well, the condensate is again commingled with the gas and transported with the gas through the gathering lines of the purchaser to the plant proper for separation of the condensate and extraction and processing of the natural gasoline.

In answering this question, we assume that the producer, in consideration for the sale of the natural gas, has been allocated a fair share of the total actual production which was marketed by the buyer at its fair market value. Admittedly, for tax purposes, the producer and purchaser can make any sort of a contract for the sale of the natural gas based on any sort of a formula as long as it is an "arm's length" transaction and the contract sales price includes everything of value received by the producer including any bonus or premium. The formula adopted in the contract by the producer and purchaser has for its purpose that of determining the amount to be paid the producer. It is expressed in the terms of a percentage of the value of the liquids separated and processed from the total natural gas produced by each well. In this case (Skelly Oil Company's W. F. Beall Unit No. 1 T) approximately 59% of the total value of the liquids allocated to the unit are paid as "royalty" to the producer by United Gas Pipe Line Company.

Since this is a sale for cash, the market value of the gas should be computed on the producer's gross cash receipts. Thus the taxable value of the gas as produced will be the sum of the following items:

(1) The amount received for the sale of the gas at the well-head at 4¢ per m.c.f.

(2) The amount received by the producer or seller for the sale of the liquid hydrocarbons extracted, processed and sold by the buyer as determined by the contract formula.

It is therefore our opinion that the producer should be taxed at the rate of 5.2% of the total "value" received for the sale of his product.

Your second question concerns the computation of the tax under the terms of the submitted Processing Agreement between the Chicago Corporation and the producers of natural gas in the Carthage Field. Under the terms of the submitted Processing Agreement, the producer drills, equips, and operates the well. The producer measures the volume of gas produced with his own equipment and delivers the gas to the processor's intake lines located at the plant site designated the delivery point. The producer is allocated a portion of the total plant products based on a formula which has as its basis the percentage which the producer's total theoretical production bears to the total theoretical liquid hydrocarbon content of all the gas delivered to the plant. The theoretical liquid content of the gas produced by each well, or unit, per thousand cubic feet is determined by tests made by the processor every six months, using special testing apparatus.

The processor (Chicago Corporation), acting as an agent under the contract, processes the natural gas for the producer. In consideration for his services in processing the gas, the producer assigns the agent a percentage of the products extracted from the gas produced. This percentage of the products becomes the absolute property of the processing agent when actually separated and extracted. If the producer does not elect to take his share of the products in kind, the processing agent is authorized to sell the producer's portion on the same terms and for the same price as it sells its own share, deducting the leading costs and other actual costs incurred in marketing the products.

The contract does not provide for any separation of the liquids except at the plant (with the exception of the tests made periodically to determine liquid content). Any non-mechanical separation is made by the processor at the plant. After careful consideration of this contract it is our opinion, assuming a bona fide sale at "arm's length," that the taxable value of the gas is the total amount of money received by the producer for the sale of the gas computed at the rate of five and two-tenths (5.2) per cent of such value.

## SUMMARY

The producers of natural gas under the submitted contracts are liable for gas production taxes computed at the rate of 5.2 per cent of the gross cash receipts, since none of the liquid hydrocarbons are recovered by non-mechanical means incidental to the production of the gas. Art. 7047b, V.C.S.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By          Frank Lake
            Frank Lake
            Assistant

FL/mwb

APPROVED

ATTORNEY GENERAL